IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL DAVID DIGIACOBBE,          :
       Plaintiff                              :
    v.                                             : Case No. 3:24-cv-208-KAP
WILLIAM BROTHERS, *et al.*,        :
       Defendants                         :

Memorandum Order

      Plaintiff DiGiacobbe, an inmate formerly detained at the Blair County Prison and now a sentenced prisoner at S.C.I. Somerset, filed a complaint in September 2024 that was dated August 5, 2024 against three defendants: 1) William Brothers, a fellow inmate who allegedly attacked DiGiacobbe on May 19, 2024 at the Blair County Prison; 2) the Blair County Prison itself; and 3) Prime Care, the contract medical care provider at the Blair County Prison.

      DiGiacobbe alleged that on May 19, 2024, Brothers was having an argument with a corrections officer named Snyder and "as they were arguing [Brothers] then struck me in the face. This caused DiGiacobbe serious injuries. He was taken to the hospital where reconstructive surgery was performed. Upon DiGiacobbe's return he alleges he was given adequate care until he had been back about a week. Then, he alleges, his ice packs were discontinued; a week later his prescribed pain medication was discontinued with the advice that he only needed regular Tylenol.

      DiGiacobbe amended his complaint in February 2025, naming the same three defendants and attaching a slightly longer timeline of events ending in June 2024. DiGiacobbe again alleged that Brothers attacked him on May 19, 2024, this time leaving out the argument between Brothers and Snyder and simply describing the attack as an unprovoked one in Snyder's presence. DiGiacobbe complimented the care at the Altoona Hospital. He related that on his return to the Blair County Prison on May 26, 2024 he was seen by medical personnel and briefly placed in a holding cell. Left alone there DiGiacobbe fell and injured himself. He was told to shut up by a corrections officer, then placed in a longer-term cell to complete what he calls "medical lockup." From May 27 to May 29, 2024, DiGiacobbe alleges, the medical staff "treated me very good," but on May 30, 2024 he was told he would not be getting ice packs any longer. Allegedly a nurse named Cortney told him she didn't feel the ice packs were needed any more. DiGiacobbe then provides a journal of how he felt, and unsurprisingly describes being in pain. On June 9, 2024, DiGiacobbe alleges, he felt a "shift in my face" and another inmate described him as having a lazy eye, so he notified a corrections officer who called medical personnel. DiGiacobbe had x-rays on June 10, 2024. He complains that he had to wait three hours

1

to have a nurse look at him on June 9, 2024, and that no one had shown him his x-ray report as of June 26, 2024. No later events are described, although DiGiacobbe adds that he filed a grievance on June 3, 2024, complaining that he had not yet received a towel, soap, and shampoo, and that his had been taken while he was in the hospital.

The Blair County Prison and Prime Care were served and moved to dismiss the complaint for failure to state a claim. DiGiacobbe's response in full, ECF no. 30, was:

> I Michael David DiGiacobbe in response to the defendants['] Motions to Dismiss at ECF no. 23 Blair County and ECF no. 26 Prime Care. Do not wish to dismiss the defendants, but to continue to trial by jury.

Because plaintiff is an inmate proceeding *in forma pauperis* and the defendants are governmental entities or employees, the complaint is subject to screening in accordance with the Prison Litigation Reform Act as codified at 28 U.S.C.§ 1915A:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

This parallels the PLRA's requirements for litigants proceeding *in forma pauperis*, at 28 U.S.C.§ 1915(e)(2):

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal --
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

Fed.R.Civ.P. 8(a) requires the complaint to be a short and plain statement containing sufficient factual matter that if accepted as true would state a legal claim that is plausible on its face. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In the Supreme Court's words, plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from

conceivable to plausible." *Id*., 556 U.S. at 683, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff must in a nonconclusory way allege facts that permit the inference that each defendant named caused the harm alleged.

 First, and sufficient to dispose of this matter, DiGiacobbe's response offers no opposition to the motions to dismiss. It is not the duty of a court screening complaints under the PLRA or in reviewing motions to dismiss to forage through the record to see if plaintiff might have an argument notwithstanding his lack of attempt to make it. *See* Scott v. Vantage Corporation, 845 Fed.Appx. 170, 179 (3d Cir. 2021), *citing* Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)(in turn quoting Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988)) and Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir. 1989). It is settled law, and there is no special exception for *pro se* litigants, *see* Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that although courts must construe *pro se* pleadings liberally *pro se* litigants "must abide by the same rules that apply to all other litigants"), that an argument is forfeited unless a party raises it in a timely manner its opening brief, and that a passing reference to an issue does not suffice to bring that issue before the court. *See e.g.* Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994); Brown v. Wayne County, No. 22-1506, 2023 WL 3376547, at *1 (3d Cir. May 11, 2023), *cert. dismissed sub nom*. Brown v Pennsylvania, No. 23-5092, 2023 WL 6379041 (U.S. Oct. 2, 2023).

 It is worth quoting Carmen v. S.F. Unified Sch. Dist., the Ninth Circuit case cited in Scott, which considered the parallel issue in the summary judgment setting:

> [R]equiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair. The cases often refer to the unfairness to the district court, which is substantial, but hardly the full story. If a district court must examine reams or file cabinets full of paper looking for genuine issues of fact, as though the judge were the adverse party's lawyer, an enormous amount of time is taken away from other litigants. Other litigants could have that judicial time, and get their cases resolved better and faster, if the district court could limit examination to the materials submitted in opposition to the summary judgment motion.
>
> Requiring the district court to search the entire record for a genuine issue of fact, even though the adverse party does not set it out in the opposition papers, is also profoundly unfair to the movant. The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. The opposition sets it out, and then the movant has a fair chance in its reply papers to show why the respondent's evidence fails to establish a genuine issue of material fact. If the district court, or later this court, searches the whole record, in practical effect, the court

becomes the lawyer for the respondent[.]

237 F.3d at 1031. As the Court of Appeals reasoned in Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 203 (3d Cir. 2004), a party who has chosen not to argue a point should not be in a better position than one who makes an argument and loses.

When it comes to the adequacy of a *pro se* complaint's allegations of fact, a court has the duty to construe *pro se* pleadings liberally and nontechnically. *See* Mala v. Crown Bay Marina, Inc., *supra*. That is a command to overlook malapropisms and technical errors such as the naming of the Blair County Prison (the building) instead of Blair County (the political subdivision) as a defendant. But that rule has never permitted a court to construe conclusions as assertions of fact or "conjure up unpleaded facts to support ... conclusory suggestions." Hurney v. Carver, 602 F.2d 993, 995 (1st Cir.1979), *quoting* Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077 (1978), or "to construct full blown claims from sentence fragments," or "to explore exhaustively all potential claims of a *pro se* plaintiff." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986). A lack of facts amounting to a colorable claim against a defendant makes a complaint an inadequate complaint, not a vague one that needs to be clarified. *See* Unger v. National Residents Matching Program, 928 F.2d 1392, 1401-02 (3d Cir.1991). As the First Circuit observed in O'Brien v. DiGrazia, 544 F.2d 543, 546 (1st Cir. 1976):

> A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Or, as the Supreme Court more recently stated in Ashcroft v. Iqbal, supra, 556 U.S. at 687, "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."

DiGiacobbe alleges an unprovoked attack on him by Brothers, that is, he alleges a state law crime and a state law tort, neither of which fall within the original jurisdiction of this court because Brothers is a fellow inmate not alleged to be acting under color of law. There is a supplemental jurisdiction statute that provides federal jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). If DiGiacobbe has a federal claim he might argue (although as already noted he does not) that under § 1367(a) he can include Brothers in this suit as a defendant for related state claims.

However, if there is no federal claim the court may decline to exercise supplemental jurisdiction. *See id*. § 1367(c)(3). Generally, when all federal claims drop

out early, a district court ought to decline to exercise jurisdiction over state claims absent extraordinary circumstances. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995); see also DeForte v. Borough of Worthington, 2020 WL 2487133 at *3 (W.D. Pa. May 14, 2020).

The Amended Complaint states no federal claims. Arguably DiGiacobbe attempts to allege a Farmer v. Brennan failure to protect claim against Blair County and an Estelle v. Gamble deliberate indifference to serious medical needs claim against Prime Care. The Eighth Amendment imposes liability on prison officials who, by being deliberately indifferent to the risk of serious harm, fail to prevent inmates from being injured by their fellow inmates. Proof of liability has two elements: that objectively speaking there was a substantial risk of serious harm to an inmate's health or safety, and that the defendant was subjectively aware of that risk and knowingly or recklessly disregarded it. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Bistrian v. Levi, 696 F.3d 352, 367-68 (3d Cir. 2012). That subjective element requires more than ordinary negligence. DiGiacobbe's original complaint and the Amended Complaint allege that the attack came out of the blue, which means no one could have been deliberately indifferent to it. In the original complaint DiGiacobbe alleges that Brothers "got in two other fights" before the attack on DiGiacobbe. If this allegation were actually in the Amended Complaint and if an allegation that Brothers getting into fights were somehow equivalent to an allegation that Brothers was a particular danger to DiGiacobbe, there is still no allegation that any particular person had knowledge of this danger. DiGiacobbe could not even state a claim against Snyder because reliance on transferred "atmospheric" knowledge is not permitted even at the pleading stage. See Africa v. Dukes, 492 Fed.Appx. 251, 253 (3d Cir. 2012):

> The Amended Complaint alleged that Africa's cellmate was unstable and had previously attacked other inmates, and that **Dukes** was well aware of the cellmate's dangerous history. The Amended Complaint does not allege or allow for the reasonable inference that **Kerker, McKeown, Teasdale, or Noel** knew of the cellmate's dangerous history, and thus fails to state an Eighth Amendment failure to protect claim against **these** defendants (my emphasis).

And of course Snyder is not a defendant, Blair County is. There is no vicarious liability in civil rights claims. The County's operation of a prison does not make it liable for the actions of prison employees. See Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690-91 (1978) (municipal employers are liable for deprivation of civil rights caused by their own illegal customs and policies but are not liable for their employees' actions). To state a claim against Blair County, DiGiacobbe had to allege facts allowing the inference that Blair County caused some violation of his rights pursuant to a county policy. A "policy" is either an official act or a practice throughout the prison "so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S.

51, 60–61 (2011). DiGiacobbe does not allege either, nor does he allege even one similar episode that would allow the inference that a custom of Farmer v. Brennan violations existed.

As the Court of Appeals stated in Chavarriaga v. New Jersey Department of Corrections, *supra*, 806 F.3d at 223 (3d Cir. 2015):

> [T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. [*citing and quoting* Sample v. Diecks, 885 F.2d 1099, 1114 (3d Cir.1989)]

Or, as the Supreme Court stated in Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997):

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.

In Connick v. Thompson, *supra*, 563 U.S. at 70, the Supreme Court held that lower courts "must adhere to a stringent standard of fault, lest municipal liability under § 1983 collapse into *respondeat superior*." (cleaned up). Because DiGiacobbe offers nothing more than *respondeat superior* liability against Blair County he states no claim.

DiGiacobbe's inability to rely on *respondeat superior* liability similarly disposes of any claim against Prime Care. Further, there is no claim against any individual defendant for which even *respondeat superior* liability would provide a claim. Estelle v. Gamble, 429 U.S. 97 (1976), held that an Eighth Amendment claim requires allegations that a defendant was deliberately indifferent to an inmate's medical needs and an objective showing that those needs were serious. DiGiacobbe describes prompt emergency care and attentive follow-up care, and points to no instances where anyone refused or failed to treat a serious medical need: alleging that he had to wait three hours on one occasion for a nurse (without any allegations that the nurse even knew about the complaint by DiGiacobbe or that the particular situation presented an urgent need for attention), or wait one day for x-rays, or that a particular treatment (ice packs) was discontinued as unnecessary do not state a claim for deliberate indifference.

The Court of Appeals, in Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir.2002) and similar cases, directs district courts to allow plaintiffs in civil rights cases leave to amend unless that amendment is "futile" or "inequitable." But as the Supreme Court has held, it is not proper for a court to assume that a plaintiff "can prove facts that it has not alleged, or that the defendants have violated ... laws in ways that have not been

alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). In light of what DiGiacobbe has alleged, amendment is futile. The complaint is dismissed with prejudice as to Blair County and Prime Care. No attempt was made to serve Brothers, any claims against him are not within this court's jurisdiction, and supplemental jurisdiction must be declined. The dismissal of the claims against the other defendants is without prejudice to plaintiff filing a timely complaint in state court against Brothers raising any appropriate state law claims.

DATE: May 21, 2025

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Michael D. DiGiacobbe QQ-5529
S.C.I. Somerset
1590 Walters Mill Road
Somerset, PA 15510